IN THE COURT OF APPEALS OF TENNESSEE

FILED

July 22, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

TRABON GENTRY, as the Executor ) C/A NO. 03A01-9610-CV-00341
for the Estate of DONNIE R. )
GENTRY, Deceased, )
)
    Plaintiff-Appellant, )
) APPEAL AS OF RIGHT FROM THE
) HAMILTON COUNTY CIRCUIT COURT
v. )
)
)
NORFOLK SOUTHERN RAILWAY COMPANY,)
) HONORABLE ROBERT M. SUMMITT,
    Defendant-Appellee. ) JUDGE


For Appellant                          For Appellee

B. STEWART JENKINS                     CLAYTON M. WHITTAKER
ROBERT D. BRADSHAW                     Foster, Foster, Allen &
Jenkins & Bradshaw, P.C.                 Durrence
Chattanooga, Tennessee                 Chattanooga, Tennessee


OPINION


AFFIRMED AND REMANDED                                    Susano, J.

This is a suit for damages brought under the Federal Employers' Liability Act, 51 U.S.C. § 51, *et seq.* (FELA), by the Executor of the Estate of Donnie R. Gentry (Gentry). The Executor sued Gentry's employer, Norfolk Southern Railway Company (Norfolk Southern), alleging that Norfolk Southern's negligence had caused Gentry to suffer a fatal heart attack while on the job. As expressed in answers to interrogatories, the jury found that Norfolk Southern was negligent; however, it then concluded that such negligence did not cause Gentry's death. The jury thus returned a verdict in favor of Norfolk Southern. The Executor appealed the trial court's judgment entered on the jury's verdict, raising various issues which substantially present the following questions for our review:

> 1. Does the record contain material evidence to support the jury's determination that Norfolk Southern's negligence did not cause, in whole or in part, Gentry's death?
>
> 2. Did defense counsel improperly vouch for the credibility of a witness and make prejudicial remarks based upon facts outside the record, thereby impermissibly affecting the jury's verdict?
>
> 3. Did the trial court err in giving the jury an instruction regarding purely emotional injuries?

## I. *Facts*

At the time of his death, Gentry was employed as a lieutenant with the Norfolk Southern police department. In each year since 1985, Gentry had undergone an annual physical examination, as required by the railroad. Norfolk Southern had designed an evaluation form and procedure to be followed by the

2

physicians selected to perform the examinations. Neither the procedure nor the form provided for inquiry into the employee's family history of disease. The results of the yearly examinations were typically reviewed by Dr. J.P. Salb, Norfolk Southern's Director of Medical Services.

In 1987, Gentry was informed by Dr. Salb that his cholesterol level was 69 points over the recommended maximum level of 200. Dr. Salb recommended that Gentry observe a low-fat diet. Following Gentry's physical in 1988, Dr. Salb recommended that he lose at least seven pounds, which he had gained since the last examination. In 1989, Dr. Salb again recommended that Gentry lose weight. Dr. Salb subsequently discontinued his practice of writing follow-up letters to the employees, and Gentry received no further communication from Dr. Salb regarding the results of his yearly examinations. Gentry continued, however, to exhibit several risk factors for coronary artery disease, including high cholesterol and triglyceride levels, smoking and obesity.

At his examination in July, 1991, Gentry complained of having suffered chest pain for three or four months. Although his cholesterol and weight had dropped temporarily in 1990, they had returned to elevated levels by the time of his 1991 physical. However, the examining physician, Dr. Nat Swann, noted that the results of Gentry's electrocardiogram were normal and apparently concluded that Gentry's chest pain was likely the result of indigestion. Dr. Swann scheduled gall bladder and gastrointestinal tests, but Gentry did not return to undergo

3

those tests.  Dr. Swann did not diagnose Gentry as having coronary artery disease, nor did he discover that Gentry had a family history of that affliction.

In the months leading up to his death, Gentry continued to suffer chest pain.  His wife expressed her concern that there could be a problem with his heart, but he assured her that it was merely indigestion.  On June 12, 1992, Gentry suffered a fatal heart attack while investigating a train derailment.  The medical examiner determined the causes of death to be an acute myocardial infarction, i.e., blockage of an artery to the heart, and coronary atherosclerosis, i.e., deposits of cholesterol in the arteries.  He also viewed Gentry's obesity as a contributing cause.

The Executor brought suit on behalf of Gentry's estate, alleging that Norfolk Southern was negligent in failing to diagnose Gentry's coronary artery disease in failing to warn him of his condition, and in continuing to place him in a stressful work environment.  Following a trial, the jury found that although Norfolk Southern was negligent, its negligence did not cause Gentry's death, in whole or in part.

II. *The Federal Employers' Liability Act*

The FELA provides, in pertinent part, that

> [e]very common carrier by railroad while
> engaging in commerce between any of the
> several States... shall be liable in damages
> to any person suffering injury while he is

4

employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier...

45 U.S.C. § 51. The parties stipulated that at the time of Gentry's death: 1) Gentry was an employee of Norfolk Southern; 2) he was performing duties in the course of his employment; and 3) Norfolk Southern was a common carrier by railroad, engaged in interstate commerce. Thus, the issues left for the jury to determine were whether Norfolk Southern was negligent and whether that negligence caused, in whole or in part, Gentry's injuries and death. As noted earlier, the jury did find that Norfolk Southern was negligent. Norfolk Southern concedes in its brief that there was evidence of negligence--on the part of its physicians--from which the jury could have reached such a conclusion. Therefore, the central issue on this appeal involves the question of causation. We must determine whether the record contains material evidence from which the jury could have concluded that Norfolk Southern's negligence did not cause Gentry's death.

The United States Supreme Court has stated that the provisions of the FELA, including those relative to causation, are to be liberally construed to further Congress' remedial goal. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 114 S.Ct. 2396, 2404, 129 L.Ed.2d 427 (1994). In *Consolidated Rail Corporation*, the Court reaffirmed an earlier holding regarding causation under the FELA:

5

> . . .we held in **Rogers v. Missouri Pacific R. Co.**, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), that a relaxed standard of causation applies under FELA. We stated that "[u]nder this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." **Id.,** at 506, 77 S.Ct., at 448.

**Consolidated Rail Corp.,** 114 S.Ct. at 2404.

III. *Standard of Review*

The United States Supreme Court has held that a jury's determination in a FELA case is entitled to great weight on appeal:

> Only when there is a complete absence of probative facts to support the conclusion reached [by the jury] does a reversible error appear.

**Dennis v. Denver & Rio Grande Western R.R. Co.**, 375 U.S. 208, 84 S.Ct. 291, 293, 11 L.Ed.2d 256 (1963)(quoting **Lavender v. Kurn**, 327 U.S. 645, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946)). In **Lavender**, the Court stated that in an FELA case, where the circumstances evidence a reasonable basis for the jury's verdict, an appellate court may not weigh the evidence or assess the credibility of witnesses and arrive at a contrary conclusion. **Lavender**, 66 S.Ct. at 744. The Court further noted that

> the appellate court's function is exhausted when that evidentiary basis becomes apparent,

6

> it being immaterial that the court might draw
> a contrary inference or feel that another
> conclusion is more reasonable.

*Id.*

IV. *Jury's Finding of No Causation*

We have determined that the record does contain material evidence from which the jury could have concluded that Norfolk Southern's negligence did not play any part, "even the slightest," in Gentry's death. For example, there was evidence that Gentry smoked up to a pack and a half of cigarettes each day; that Gentry was overweight and did not follow Dr. Salb's suggestion that he lose weight; and that he continued to register a high cholesterol level, despite having been advised to take steps to lower it. Robert Waggoner of Norfolk Southern testified that Gentry had told him that he had a problem with his EKG, as well as high cholesterol, but that he was going to have to postpone some necessary tests. In addition, the record indicates that Gentry failed to return to Dr. Swann's office, or to see another physician, for the gastrointestinal testing that Dr. Swann had ordered in response to Gentry's complaints of chest pain. Mrs. Gentry testified that she had expressed to Gentry her concern that his chest pain could have been the result of a heart problem. Gentry, however, assured her it was not related to his heart, and he took no further steps to have the problem diagnosed.

Given the foregoing, we find the jury's conclusion --

that Gentry's death was caused by factors other than Norfolk Southern's negligence -- to be supported by the evidence. Where the record contains an evidentiary basis to support its verdict, the jury is at liberty to discard any facts that are inconsistent with its determination. *Dennis*, 84 S.Ct. at 293; *Lavender*, 66 S.Ct. at 744. Therefore, any countervailing evidence is essentially of no consequence on this appeal. Our role is confined to determining whether the record reflects evidence from which the jury could have reached the conclusion that it did. Once such evidence "becomes apparent", as it has upon our review of the record, our inquiry into this issue is concluded. *Id.*

## V. *The Executor's Other Issues*

We will now address the remaining issues raised by the Executor. The Executor argues that the trial court should have granted his motion for a new trial, based upon alleged misconduct during closing argument by Norfolk Southern's counsel. Specifically, the Executor insists that defense counsel improperly vouched for the credibility of a witness and made prejudicial remarks to the jury that were based upon facts outside the record, and that such statements unduly influenced the jury's verdict.

The Executor contends that defense counsel's statement that the witness Robert Waggoner "is a very honest and forthright person" violated Disciplinary Rule 7-106(C)(4) of the Code of Professional Responsibility and was hence improper. That section provides, in pertinent part, as follows:

8

> In appearing in a professional capacity
> before a tribunal, a lawyer shall not:
>
>       *    *    *
>
> [a]ssert the lawyer's personal opinion... as
> to the credibility of a witness....

Rule 8, Tenn. S. Ct. R., DR 7-106(C)(4). It appears that Norfolk Southern offered Waggoner's testimony primarily to show that Gentry had been aware of his heart problem, and that he had postponed the scheduled gall bladder and gastrointestinal tests. The Executor also points out that defense counsel argued that if the jury believed Waggoner's testimony, then the jury would be obligated to return a verdict for Norfolk Southern. He contends that by vouching for Waggoner's honesty, defense counsel improperly reinforced and accredited his testimony, thus influencing the jury's verdict.

Following the Executor's objection to defense counsel's comments, the trial court offered this cautionary instruction to the jury:

> whether a witness was telling the truth is
> strictly for you, the jury, to decide. You
> must ignore references to witnesses as honest
> and telling the truth. I will instruct you
> on how to judge credibility in my
> instructions later.

During its jury charge, the trial court offered additional instructions regarding the proper assessment of the credibility of the witnesses.

We believe that any error that may have occurred in

9

this regard was corrected by the court's subsequent instructions to the jury. Furthermore, when the record is considered as a whole, it is unlikely that defense counsel's statements regarding Waggoner affected the jury's verdict. Accordingly, we hold that the trial court did not abuse its discretion in refusing to grant a new trial on this ground.

The Executor next contends that defense counsel made highly prejudicial comments to the jury, based upon facts outside the record, regarding Gentry's relationship with his severely retarded son. At the time of his death, Gentry was paying $400 per month to his ex-wife as child support for the benefit of his son Jeff, who suffered from cerebral palsy and mental retardation. During his argument on the issue of damages recoverable for Jeff Gentry's loss of his father's financial support, defense counsel stated that "from the time of the divorce, Mr. Gentry never went back to see his son, never did. He never added anything at all." The Executor contends that these remarks had the prejudicial effect of creating an unfavorable impression of Gentry in the minds of the jurors. Norfolk Southern, on the other hand, contends that the statements were based upon a reasonable inference to be drawn from the testimony of Gentry's ex-wife, who stated that she had only seen Gentry "in passing" since their divorce.

These statements of defense counsel were made in the context of Norfolk Southern's argument that, with regard to the issue of damages, Gentry's estate was entitled to recover no more than $400 a month for the benefit of Jeff Gentry. They were not

relevant to the question of causation, an element which the jury concluded the Executor had failed to prove. We do not believe that the jury's determination regarding causation was affected by defense counsel's comments about Gentry's relationship with his son. Furthermore, the record indicates that Gentry's son lived with his ex-wife and was completely dependent upon her for his care. It is a reasonable inference from these living arrangements that Gentry would have frequently seen his ex-wife if and when he visited his son. Defense counsel's remarks, therefore, were reasonably based upon the ex-wife's testimony that she had only seen Gentry "in passing" since their divorce. In any event, as previously noted, we do not believe that these comments, even if unsupported by the evidence, affected the jury's verdict. Therefore, the trial court did not abuse its discretion in refusing to award a new trial on that basis.

Finally, the Executor contends that the trial court erred by instructing the jury regarding emotional injuries, the zone of danger, and workplace stress under the FELA. The Executor argues that the instruction was confusing, irrelevant, and given out of order, and that it therefore improperly affected the jury's verdict. We disagree. The instruction contains an accurate statement of the law. It was warranted under the circumstances of this case. The Executor's theory of the case, as composed by his counsel, was read to the jury by the trial judge. It included the argument that the physical and mental stress placed upon Gentry had created an unsafe place to work, thereby contributing to Gentry's heart attack and death. Furthermore, during his closing argument, counsel for the

11

Executor told the jury that the stress placed upon Gentry represented "an important part" of his case. Nevertheless, the United States Supreme Court has refused to read the FELA to allow recovery solely for stress in the ordinary course of employment. *See* **Consolidated Rail Corp. v. Gottshall**, 512 U.S. 532, 114 S.Ct. 2396, 2412, 129 L.Ed.2d 427 (1994). Norfolk Southern was thus entitled to such an instruction, which was both relevant to a portion of the Executor's theory of the case and necessary to ensure that the jury would not erroneously award damages for workplace stress causing emotional injuries, even if related to Gentry's heart attack.

We find that the trial court did not err in giving the requested instruction on emotional injuries.

## VI.  *Conclusion*

Given the foregoing, we hold that the record does contain material evidence to support the jury's conclusion that Norfolk Southern did not cause, "even [in] the slightest," the death of Donnie R. Gentry. The Executor's issues pertaining to defense counsel's alleged misconduct and the trial court's instructions to the jury are found to be without merit.

Accordingly, the judgment of the trial court is affirmed. Costs on appeal are assessed against the Appellant and his surety. This case is remanded to the trial court for the collection of costs assessed there, pursuant to applicable law.

12

                                    _____
                                    Charles D. Susano, Jr., J.


CONCUR:


_____
Houston M. Goddard, P.J.


_____
Herschel P. Franks, J.