812 A.2d 416 (2003)
356 N.J. Super. 311
Anthony STEVENS, Plaintiff-Respondent/Cross-Appellant,
v.
NEW JERSEY TRANSIT RAIL OPERATIONS, Defendant-Appellant/Cross-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted October 23, 2002.
Decided January 2, 2003.
*418 David Samson, Attorney General, attorney for appellant/cross-respondent (Michael J. Haas, Assistant Attorney General, of counsel; Roopa Bariya, Deputy Attorney General, on the brief).
David Tykulsker, attorney for respondent/cross-appellant.
Before Judges KING, WECKER and LISA.
*417 The opinion of the court was delivered by LISA, J.A.D.
Defendant, New Jersey Transit Rail Operations, appeals from a $150,000 judgment for personal injuries entered pursuant to a jury verdict in favor of plaintiff, Anthony Stevens, in this action under the Federal Employer's Liability Act, 45 U.S.C.A. §§ 51 to 60 (FELA). On appeal, defendant argues (1) its motions for summary judgment and involuntary dismissal should have been granted because without expert testimony plaintiff failed to establish a prima facie case of negligence to establish a design defect, and (2) defendant was unfairly prejudiced by the cumulative effect of (a) plaintiff's failure to inform defendant prior to trial of his intended change in testimony, (b) violations of two in limine orders, and (c) improper summation remarks inviting the jurors to put themselves in plaintiff's place in rendering a verdict and award of damages. Defendant argues we should reverse the trial court judgment and enter judgment in its favor, or, alternatively, order a new trial. We reject these arguments and affirm. Plaintiff filed a protective cross-appeal seeking to bar certain evidence in the event we ordered a retrial. Because of our disposition, we do not address and dismiss the cross-appeal.
Plaintiff was employed by defendant as a storekeeper at defendant's facility where trains are repaired. Parts are stored on shelving racks thirty to thirty-six feet high. Plaintiff's job duties required him to retrieve parts. A manlift machine, known as a Hefty Herman machine, is used for this purpose. This is a motorized platform, which can be driven to the desired location within the storage racks and then elevated, lifting the operator to the necessary height to reach the needed parts. One machine owned by defendant was the Hefty Herman # 3.
In its "down" position, the machine's platform is about five feet off the ground. Above the platform, flush with the side where the machine is mounted and dismounted, is a moveable safety cross-bar, which can be slid up to the location of a higher fixed cross-bar.[1] In mounting the *419 machine, the operator must place one foot on the step, which is about two to three feet off the ground. While stepping up to the platform he must push the moveable safety bar upward with both hands. While continuing to move his body upward, the operator must engage in an awkward twisting motion of his upper body under the bar, which he is holding with both hands. He then lowers the safety bar behind him as he gets onto the platform. Dismounting requires a similar process in reverse.
Plaintiff and many other storeroom employees constantly complained to their supervisors about the difficulty in mounting and dismounting the machine. They received no training on mounting and dismounting techniques. Although their supervisors regularly observed them mounting and dismounting the machine, the supervisors never informed plaintiff or his co-workers they were getting on or off incorrectly.
Prior to December 1995, the Hefty Herman # 3 had no step attached. One of plaintiff's co-workers, Robert Woodson, testified at trial about the injury he suffered on December 6, 1995 in dismounting the machine:
Well, I was dismounting the Hefty Herman, which is a[n] awkward machine to begin with. Always said you had to be a contortionist to get off that machine. And you literally had to propel yourself off, swing out. And in doing so, there was a[n] oil spot and I slipped and hurt myself in the groin area.
Shortly after Woodson's accident, defendant welded a step on the Hefty Herman # 3. At about the same time, defendant ordered a newer version of the machine, which came equipped with a ladder for mounting and dismounting. When the new machine, known as the Genie, arrived and was placed into service, defendant's supervisors instructed plaintiff and his co-workers to use the Genie whenever possible because it is safer to mount and dismount; the Hefty Herman # 3 was to be used only if the Genie was unavailable.
Plaintiff injured his shoulder on November 2, 1997 while mounting the Hefty Herman # 3. He tore his rotator cuff, requiring two surgeries. In his trial testimony, plaintiff described the mounting procedure:
Yes. Youyou have to have one foot on that. You have to hold up the cross bar with two hands to pull it up to the top. So the cross bar don't come down on your head. Then you have to pull yourself up under, release and go under the cross bar so the bar will be behind your neck like this.
When asked why both hands are needed to push up the cross bar, plaintiff explained:
Because to balance yoursee II mean, I'm pretty heavy, so one hand won'twon't be able to pull myself up up on the platform, so I would have to use two hands to hold the cross bar. Plus turn myself under, underneath the cross bar to get on top of the platform. You have to hold both bars up to the stationary bar, come under, release the left hand and come under like this. `Cause I'm a right hand person. That's the way it have to be done for me to get on the platform of this machine.
Plaintiff further testified that the addition of the step after Woodson's injury did not *420 solve the problem. Although "[i]t gave you more footing, ... you would still have to push up the moving bar and twist your body under theunderneath the machine to get on board...." The Genie, with its ladder, which provided direct access to the platform, required no pushing up of a bar, no twisting motion, and no ducking of the operator's head underneath anything.
Plaintiff and his co-workers continued to complain about the difficulties after the step was added. When plaintiff specifically stated he did not want to use the Hefty Herman # 3, his supervisor responded, "You're going to use that machine, if you need to use that machine, you're going to use that machine or you'll be brought up on charges or you'll be disciplined." On November 2, 1997, according to plaintiff, the hydraulic lift on the Genie was not working and he was required to use the Hefty Herman # 3. Plaintiff testified as he was boarding the machine, while pushing the bar up and coming under the bar, "I heard something snap in my right shoulder." He called out to his supervisor that "Something [is] wrong with my shoulder. I can't move my shoulder."
Plaintiff brought this action under the FELA[2], alleging defendant negligently failed to provide him a reasonably safe workplace, which resulted in his injury. In pertinent part, the FELA provides:
Every common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury or death resulting in whole or in part from the negligence of any officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery ... or other equipment.
[45 U.S.C.A. § 51.]
In FELA cases, the burden is on the plaintiff to produce evidence of employer negligence. Rogers v. Missouri Pac. R.R. Co., 352 U.S. 500, 508, 77 S.Ct. 443, 449, 1 L.Ed.2d 493, 500 (1957). Plaintiff's burden may be met either through direct or circumstantial evidence, but must be sufficient to provide an inference of employer negligence. Ibid.
[W]hen Congress enacted FELA in 1908, its "attention was focused primarily upon injuries and death resulting from accidents on interstate railroads." Cognizant of the physical dangers of railroading that resulted in the death or maiming of thousands of workers every year, Congress crafted a federal remedy that shifted part of the "human overhead" of doing business from employees to their employers.
[Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 542, 114 S.Ct. 2396, 2403-04, 129 L.Ed.2d 427, 439 (1994) (citations omitted).]
The Court made clear that although the FELA did abolish certain defenses, common law principles of tort liability still govern where the FELA is silent. Id. at 544, 114 S.Ct. at 2404, 129 L.Ed.2d at 440-41. The FELA is not a workers' compensation statute; it does not impose additional obligations on the employer, and it does not make the employer "the insurer of the safety of his employees while they are on duty." Id. at 543, 114 S.Ct. at 2404, 129 L.Ed.2d at 440 (quoting Ellis v. Union Pac. R.R. Co., 329 U.S. 649, 653, 67 S.Ct. 598, 600, 91 L.Ed. 572, 574 (1947)). Under the *421 FELA, "[t]he basis of [the employer's] liability is his negligence, not the fact that injuries occur." Ibid.
In short, plaintiff must come forward with evidence to establish the existence of an element essential to his case. In so doing, he must establish negligence under the FELA. His task is relatively simple: to show that defendant's negligence played any part, even the slightest [,] in producing the injury for which damages are sought. Having said that, however, it is well to remember that speculation, conjecture and possibilities are still not enough.
[Beeber v. Norfolk Southern Corp., 754 F.Supp. 1364, 1368 (N.D.Ind.1990) (emphasis added) (citations omitted).]
Under the FELA standard, which is more liberal than generally provided by the common law of negligence, recovery may be had where
the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due "in whole or in part" to its negligence.

[Rogers v. Missouri Pac. R.R. Co., supra, 352 U.S. at 506-07, 77 S.Ct. at 448-49, 1 L.Ed.2d at 499-500 (emphasis added).]
"Consequently, `the quantum of evidence required to establish liability in [a] FELA case is much less than in an ordinary negligence case.'" Kapsis v. Port Auth. of New York and New Jersey, 313 N.J.Super. 395, 403, 712 A.2d 1250 (App.Div.1998) (quoting Harbin v. Burlington N. R.R. Co., 921 F.2d 129, 131 (7th Cir.1990)).
FELA plaintiffs must prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation. Aparicio v. Norfolk and Western R.R. Co., 84 F.3d 803, 810 (6th Cir. 1996). The FELA establishes a duty on the part of a common carrier to use reasonable care in providing employees a safe work environment. Bailey v. Central Vermont R.R., 319 U.S. 350, 352, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444, 1447 (1943). Ensuring that employees have proper equipment with which to perform their work assignments falls within this non-delegable duty. Hose v. Chicago Northwestern Transp. Co., 70 F.3d 968, 978 (8th Cir.1995); Rodriguez v. Delray Connecting R.R., 473 F.2d 819, 821 (6th Cir.1973). The availability of safer alternative equipment is evidential on this issue. Rodriguez v. Delray Connecting R.R., supra, 473 F.2d at 821.
Applying these standards, we are satisfied plaintiff's evidence was sufficient to present a jury issue. For the same reasons, defendant obviously was not entitled to summary judgment or to judgment pursuant to R. 4:37-2.
Defendant tried this case on the premise that plaintiff's accident did not happen at all or, at best, it did not happen as plaintiff *422 said it did. Although the FELA provides for diminution of damages recoverable based on comparative negligence, 45 U.S.C.A. § 53, the trial judge determined there was no evidence of negligence on plaintiff's part and did not submit the issue of comparative negligence to the jury. Defendant does not challenge that ruling on appeal. Defendant presented only two witnesses, and through them presented to the jury videotape evidence derived from a nine-camera multiplex system in the facility where the accident occurred. This system is not a continuous recording device. Each camera takes snapshots, in sequence, at two-second intervals. With nine cameras, each camera takes a snapshot every eighteen seconds.
The tape was played for the date of plaintiff's accident. Defendant argued to the jury that portions of the tape that captured plaintiff's movements were inconsistent with his testimony about his activities that day and did not show him mounting Hefty Herman # 3 and being injured. Defense counsel concluded his summation by stating "it didn't happen. Now, ladies and gentlemen, seeing is believing. Those pictures are worth more than Mr. Stevens' words. The only answer to the question, did Mr. Stevens get injured on a Hefty Herman on November 2nd, 1997, that makes any sense, any common sense whatsoever, is no." The jury rejected this argument.
As it argued in the trial court, defendant argues on appeal that plaintiff's proofs were insufficient to make out a prima facie case of negligence. It contends that without expert testimony to establish a design defect, in light of industry standards and cost-benefit analysis, plaintiff's case was fatally flawed. We do not agree. Defendant offered no proof at trial to refute plaintiff's evidence regarding the characteristics of Hefty Herman # 3, the mounting and dismounting requirements, the lack of training or instructions regarding mounting and dismounting techniques, the fact that plaintiff's injury was contemporaneously reported to his supervisor and recorded in an official incident report, the constant complaints by plaintiff and his co-workers (before and after the addition of the step) regarding the difficulties in mounting and dismounting Hefty Herman # 3, the acquisition of a newer model machine which did not require the awkward contortions in mounting and dismounting, the failure to modify Hefty Herman # 3 in a manner to obviate those contortions, the instructions by supervisors to use the newer Genie machine unless it was unavailable, and the directive to plaintiff that if he did not use Hefty Herman # 3 when ordered to do so he would be disciplined.
The contortions required to get on and off this machine were readily apparent to any lay observer and could be rationally evaluated by laypersons as to whether requiring plaintiff to engage in this activity deprived him of a reasonably safe workplace. Defendant was on notice of the condition constructively, by virtue of the self-evident nature of the required awkward maneuver, and actually, by virtue of the numerous complaints lodged by plaintiff and his co-workers. The jury's finding that defendant breached its duty of using reasonable care to provide plaintiff with a safe work environment is supported by the evidence.
We next address the trial error issues raised by defendant. Defendant made a post-trial motion for a judgment notwithstanding the verdict, R. 4:40-2, or, in the alternative, for a new trial because the verdict was against the weight of the evidence, R. 4:49-1. These motions were properly denied. Defendant argues before us, as it did before the trial court, that the combined effect of the three asserted *423 transgressions by plaintiff entitle it to reversal and either a judgment in its favor or, alternatively, a new trial. Defendant's contentions on these points lack sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(1)(E). We make the following brief comments.
Any changes in plaintiff's testimony from his deposition to trial were inconsequential and could have been reasonably anticipated by defendant. Those changes were developed by defendant as prior inconsistent statements and impugned plaintiff's credibility. This created no prejudice to defendant, particularly in light of its strategy of denying that the accident occurred. We reject defendant's contention that plaintiff's counsel violated two in limine orders by comments in his summation. The in limine order that barred reference to defendant's size and financial condition was not violated by counsel's passing reference that defendant cared about money. Nor did counsel's arguments that Hefty Herman # 3 was unsafe violate the in limine order barring lay opinion testimony that it was unsafe. Finally, plaintiff's counsel admittedly violated the "golden rule" by suggesting the jurors should place themselves in plaintiff's shoes in determining his award. The trial judge immediately interceded, directed the jury to disregard the remark, and gave a proper curative instruction. None of these issues, individually or collectively, deprived defendant of a fair trial so as to warrant reversal.
Affirmed on the appeal; dismissed on the cross-appeal.
NOTES
[1] The record contains no measurements of the Hefty Herman # 3. In his trial testimony, plaintiff's predominant testimony was that the platform was about five feet off the ground in its down position. At one point, he estimated it was only about three or four feet off the ground. In his certification in opposition to defendant's summary judgment motion, plaintiff stated the platform was "approximately three feet off the ground." There was no testimony estimating the height of the moveable cross-bar above the platform. Enlarged (20"x30") photographs of the machine were placed in evidence. From our review of the photographs, and considering plaintiff's testimony as a whole, including his undisputed testimony that the step was about two to three feet off the ground, the jury could have reasonably found that the platform, in its lowest position, was about five feet off the ground and the moveable safety bar was several feet above the platform.
[2] State courts are vested with concurrent jurisdiction with federal courts to hear FELA cases. 45 U.S.C.A. § 56.