**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0142-23

VIRGILIO M. CALING,

     Plaintiff-Appellant,

v.

NEW JERSEY TRANSIT
RAIL OPERATIONS, INC,

     Defendant/Third-Party
     Plaintiff-Respondent,

v.

DEBORAH BAILEY,

     Third-Party Defendant-
     Respondent.

_____

     Argued October 1, 2024 – Decided October 18, 2024

     Before Judges Sumners and Perez Friscia.

     On appeal from the Superior Court of New Jersey, Law
     Division, Essex County, Docket No. L-0319-21.

Patrick J. Finn argued the cause for appellant (The Myers Firm, Attorneys at Law, PC, attorneys; Patrick J. Finn, on the briefs).

Liam B. McManus argued the cause for respondent New Jersey Transit Rail Operations, Inc. (Florio, Perrucci, Steinhardt, Cappelli, & Tipton, LLC, attorneys; Brian R. Tipton and Liam B. McManus, on the brief).

PER CURIAM

Plaintiff Virgilio Caling appeals from the Law Division's August 4, 2023 order granting summary judgment to defendant New Jersey Transit Rail Operations, Inc. and dismissing plaintiff's complaint under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60. Following our review of the record, parties' arguments, and applicable legal principles, we affirm.

I.

The facts established in the summary judgment record are viewed in the light most favorable to plaintiff, the non-moving party. See Crisitello v. St. Theresa Sch., 255 N.J. 200, 218 (2023). Plaintiff, an electrician employed by defendant, was responsible for troubleshooting train electrical and mechanical issues. During the afternoon of January 19, 2018, while working, plaintiff waited on the Newark Broad Street station platform for a train to Hoboken. Debra Bailey, who is homeless, asked plaintiff politely for a cigarette. After

plaintiff replied that he did not smoke, Bailey "walk[ed] away towards the stairs at the end of the platform."

When the train arrived, Bailey returned and struck plaintiff in the back of the head, causing him to fall into the train. Plaintiff "saw stars" but recovered and "was . . . able to get up right away." Two New Jersey Transit (Transit) police officers, Lieutenant Luis Perez and Patrol Supervisor Dominic Imperiale,[1] responded to the scene in less than two minutes. One of the officers stopped plaintiff from confronting Bailey and inquired of her why she struck him. The officers restrained Bailey, and Emergency Medical Services (EMS) "aided [her] . . . as an emotionally disturbed person." After returning to the Hoboken Station, plaintiff reported the incident to his work superior, Anthony Arroyo, and then obtained medical treatment at a hospital. He later underwent two spinal surgeries and other treatment.

At his deposition, plaintiff testified to witnessing homeless people congregate in the Broad Street station waiting area between 10 a.m. and 12 p.m. He believed they did so because no police patrolled during that time. He acknowledged "frequently" seeing Bailey at the station but recalled nothing

---

[1] Because Dominic Imperiale and Alan Imperiale share the same surname, intending no disrespect, we use their first names in this opinion.

A-0142-23

unusual about her. Further, having seen Bailey on prior occasions "in the station," he relayed "know[ing]" that on the day of the incident, Bailey "was pregnant."

In December 2016, Bailey had been previously cited for disorderly conduct at the Broad Street station. After Transit police responded to a call, they determined Bailey had a verbal dispute with another party.

Dominic testified at his deposition that usually one officer would patrol the Broad Street station to ensure "everything [wa]s okay." Because the station had a high volume of commuters, the Transit police had "a visible presence there." Although the station had no particular reputation for violence or drugs, he testified homeless people congregated there and generally were not permitted to be removed. Perez testified the station was "no different than any other station [the Transit police] patrol[led]" in terms of criminal or drug activity. He had responded with Dominic to the scene and spoke to plaintiff while Dominic had interviewed Bailey. He recollected "[n]o one was arrested," but Bailey received EMS assistance. After the incident, Perez interacted with Bailey on a couple occasions.

Dwayne Jones, a train conductor who witnessed the incident from "less than ten feet" away from plaintiff, testified to seeing Transit police presence

4

approximately "[twenty-five] percent of the time" at the Broad Street station. Further, he never witnessed any assaults or altercations.

Joseph Ragazzo, a Transit patrolman, testified that in January 2018, anywhere from one to three officers were tasked with patrolling the Broad Street station location. He relayed the Broad Street station was a place for "people to utilize . . . trains to try to loiter, to obtain drugs, [or] maybe use the bathroom."

Alan Imperiale, a Transit sergeant, testified that "[a]nywhere from nine to twelve [officers]" would patrol the district containing the Broad Street station and other stations, but generally "just one person" was assigned to cover "the city subway portion of Newark" and "the Broad Street station." Although the station was "relatively one of [the] safer stations," he testified homeless people congregated there. He explained the Transit police exercised their "best efforts to make frequent checks that move[d] [the homeless population] along." Further, he explained the station was a "public transportation facility" and homeless people were "entitled to certain rights," and could not be barred from the station. Alan acknowledged "handl[ing] assaults" at Broad Street station during his approximately thirteen-year career.

Plaintiff's expert, Dr. Kevin Gotham, provided a report as "a sociologist specializing in crime prevention, security management, real estate and housing

5

policy, and forensic criminology." After visiting and reviewing the entire Broad Street station, Dr. Gotham opined it had characteristics that presented a heightened risk for crimes. He opined the station: "ha[d] a reputation for drug activity and [wa]s known as an area where homeless people concentrate[d]"; lacked "mechanical access control strategies" permitting "[a]nyone . . . access [to] the facility and platforms where legitimate users (patrons) [we]re waiting for the trains"; had "short sight lines, blind spaces of surveillance, and diminished capacity for informal or natural surveillance"; and was "a poorly maintained property with copious amounts of litter and graffiti."

Dr. Gotham referenced Patrolman Ragazzo's testimony that homeless people gathered and sought shelter at the station. He also stated, "While the platforms offer[ed] ample amounts of surveillance for patrons, the portal beneath the rail lines was poorly lit, had a low ceiling, and did not have convex mirrors to allow one to see others coming around the corners." He explained a poorly maintained space with "loitering, litter, [and] graffiti" could "attract crime and deter use by legitimate users." Citing seventy-four reports of crime at the station over a two-year period, ten of which involved violent crimes, Dr. Gotham opined "a criminal assault was reasonably foreseeable on the premises"

6

because "the recency, frequency, and similarity of criminal incidents indicate[d] a heightened and unreasonable risk of criminal victimization and harm."

As to defendant's deviation from the standard of care regarding safety, Dr. Gotham opined defendant failed "to act on knowledge of prior crimes at the . . . [s]tation and assess the station's level of crime risk and vulnerability." He relayed not having received or reviewed "evidence that . . . defendant completed any security risk assessment to determine crime exposure to customers, transit operations, and infrastructure at the . . . Broad Street [s]tation," comporting with the American Public Transportation Association's (APTA) security recommendations. He contended "[t]here was no other security presence besides the responding officers" on the day of the incident. Finally, Dr. Gotham opined the attack on plaintiff resulted from the lack of "capable guardianship" and defendant's failure to implement "security measures to effectively deter reasonably foreseeable criminal activity." He highlighted that Bailey "frequented transit stations in New Jersey and was known to cause disturbances," including both before and after the attack on plaintiff.

On January 13, 2021, plaintiff filed a one-count FELA complaint against defendant. Plaintiff alleged defendant's negligence caused his injuries by failing to: "inspect its property for unsafe conditions"; "inspect its property for

7

dangerous and/or unsafe individuals"; "remove dangerous and/or unsafe individuals"; "warn of any unsafe conditions"; "provide adequate security"; "promulgate and enforce safe work methods and rules"; and "warn [plaintiff] of the dangers posed to him by reason of [d]efendant's unsafe conditions." On April 21, defendant answered and filed a third-party complaint against Bailey. After defendant moved for default, the motion court entered default judgment against Bailey.

On July 6, 2023, defendant moved for summary judgment and to dismiss plaintiff's claim, which plaintiff opposed. On August 8, the court issued an order accompanied by an oral statement of reasons granting summary judgment and dismissing plaintiff's complaint with prejudice.

The court found plaintiff "failed to show that the condition of the . . . Broad Street [s]tation contributed in any way to . . . plaintiff's injuries." The court reasoned that plaintiff predicated his argument that the station was "unsafe and prone to criminal activity" on "an apples and oranges analogy" because Dr. Gotham's opinion focused on other locations at the station and not where the incident occurred. The court stated, "[t]he implications that [Bailey's] actions were the result of poorly lit hallways in another part of the building or that the convex mirrors, or downstairs, would have somehow prevented th[e] incident

[wa]s a stretch" and the opinion that the "portal beneath the rail line" was allegedly unsafe was irrelevant. The court further determined the statistics of prior incidents provided by plaintiff "d[id] not make the spontaneous unpredictable actions of an emotionally disturbed person foreseeable." Finally, the court found defendant's alleged "failure to adhere to plaintiff's preferred standards [under the APTA guidelines] [wa]s not evidence of negligence."

On appeal, plaintiff argues the court erroneously: invaded the province of the jury by determining the evidence was insufficient to establish negligence; determined foreseeability and causation could not be proven under FELA; and concluded Bailey's conduct was unforeseeable and could not give rise to a duty owed by defendant to plaintiff under FELA.

II.

Our review of a trial court's summary judgment decision is de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024); see also R. 4:46-2(c). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

A-0142-23

"A dispute of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Gayles by Gayles v. Sky Zone Trampoline Park, 468 N.J. Super. 17, 22 (App. Div. 2021) (quoting Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017)). "Rule 4:46-2(c)'s 'genuine issue [of] material fact' standard mandates that the opposing party do more than 'point[] to any fact in dispute' in order to defeat summary judgment." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (alteration in original) (first quoting R. 4:46-2(c); and then quoting Brill, 142 N.J. at 529). Insubstantial arguments based on assumptions or speculation are not enough to overcome summary judgment. Brill, 142 N.J. at 529; see also Dickson v. Cmty. Bus Lines, Inc., 458 N.J. Super. 522, 533 (App. Div. 2019) ("'[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome' a motion for summary judgment." (quoting Puder v. Buechel, 183 N.J. 428, 440-41 (2005))).

"FELA provides for concurrent jurisdiction of the state and federal courts, [45 U.S.C.] § 56, although substantively FELA actions are governed by federal law." Norfolk S. Ry. Co. v. Sorrell, 549 U.S. 158, 165 (2007). In relevant part, FELA provides for common railroad carriers' liability as follows:

10

> Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier.
>
> [45 U.S.C. § 51.]

A plaintiff in a FELA action must produce direct or circumstantial evidence that justifies or supports an inference of the employer's negligence. Stevens v. N.J. Transit Rail Operations, 356 N.J. Super. 311, 318 (App. Div. 2003) (citing Rogers v. Mo. Pac. R.R. Co., 352 U.S. 500, 508 (1957)). "FELA is not a workers' compensation statute; it does not impose additional obligations on the employer, and it does not make the employer 'the insurer of the safety of his employees while they are on duty.'" Ibid. (quoting Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 543 (1994)). An employer's liability stems from "his negligence, not the fact that injuries occur." Ibid. (quoting Gottshall, 512 U.S. at 543).

"FELA plaintiffs must prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation." Id. at 319. Plaintiffs must show an employer breached its duty to exercise reasonable care in providing a safe workplace, which requires a showing that the employer "knows or should know of a potential hazard in the workplace, yet fails to exercise

11

reasonable care to inform and protect its employees." Gallose v. Long Island R.R. Co., 878 F.2d 80, 84-85 (2d Cir. 1989). "Under the FELA standard, which is more liberal than generally provided by the common law of negligence, recovery may be had where 'the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.'" Stevens, 356 N.J. Super. at 318 (emphasis omitted) (quoting Rogers, 352 U.S. at 506).

Once negligence is proven, the employer "is answerable in damages even if 'the extent of the [injury] or the manner in which it occurred' was not 'probable' or 'foreseeable.'" CSX Transp., Inc. v. McBride, 564 U.S. 685, 704 (2011) (alteration in original) (quoting Gallick v. Balt. & Ohio R.R. Co., 372 U.S. 108, 120-21 & n.8 (1963)). To submit a FELA case to a jury, there must be "a reasonable basis in the record for concluding that there was negligence which caused the injury." Ellis v. Union Pac. R.R. Co., 329 U.S. 649, 653 (1947).

"Reasonable foreseeability of harm is an 'essential ingredient' of FELA cases." Hines v. Consol. Rail Corp., 926 F.2d 262, 268 (3d Cir. 1991) (quoting Gallick, 372 U.S. at 117). This element "requires proof of actual or constructive notice to the employer of the [dangerous] condition that caused the injury." Sinclair v. Long Island R.R., 985 F.2d 74, 77 (2d Cir. 1993); Gallose, 878 F.2d

12

at 85 ("The catalyst which ignites this duty is knowledge, either actual or constructive."). The employer's responsibility is "measured by what a reasonably prudent person would anticipate as resulting from a particular condition." Gallick, 372 U.S. at 118. "Thus, '[i]f a person has no reasonable ground to anticipate that a particular condition . . . would or might result in a mishap and injury, then the party is not required to do anything to correct [the] condition.'" McBride, 564 U.S. at 703 (alterations in original) (quoting Gallick, 372 U.S. at 118 n.7).

III.

We begin our review recognizing that FELA provides an expansive standard of liability that holds defendant responsible for a negligent action or inaction causally related to plaintiff's injuries. Defendant's knowledge of remote risks attendant to plaintiff's suffered harm may support liability if plaintiff demonstrates a modicum of evidence supporting defendant's failure to provide a reasonably safe workplace. As the motion court correctly observed, "[t]he quantum of evidence required to establish liability in a FELA case is much less than an ordinary negligence case."

It is under this expansive standard of liability that we review whether plaintiff demonstrates a material issue of fact supporting defendant's breach of

13

a safety standard of care by failing to protect plaintiff, its employee. We first address whether defendant had sufficient knowledge of a relevant safety risk at the Broad Street station. After our de novo review, we part ways with the court's determination that plaintiff failed to produce sufficient evidence demonstrating defendant had knowledge of relevant safety risks at the Broad Street station. Plaintiff sufficiently demonstrated a genuine issue of fact regarding safety concerns based on established crime data and Transit police officers' testimony.

We next turn to the question under FELA of whether defendant "fai[led] to observe [the required] degree of care which people of ordinary prudence and sagacity would use under the same or similar circumstances." McBride, 564 U.S. at 703 (quoting Gallick, 372 U.S. at 118). Plaintiff contends a material issue of fact exits regarding defendant's safety breach of care because defendant admitted in a supplemental security interrogatory it "does [not] adhere to the industry standard for security in relation to mass transit station, failing to follow the . . . APTA[] guideline." Plaintiff misconstrues defendant's answer, however, which stated, "to the extent recommendations of guidelines exist, [defendant] is not bound by the [APTA] recommendations and/or guidelines unless required by law." Defendant did not admit it does not follow industry standard guidelines, but rather asserted it was not bound to such guidelines. As plaintiff

concedes, the APTA standards are "recommend[ations]." While a factfinder may consider the guidelines, at the summary judgment stage, plaintiff must make a prima facie showing that defendant should have followed a relevant accepted standard and its failure to abide by the standard was a deviation causally related to plaintiff's injury. Thus, we reject plaintiff's argument that defendant admitted to not following an accepted APTA safety standard, which constituted negligence.

We note defendant argues for the first time on appeal that plaintiff's expert report should not be considered because it is a net opinion.[2] As defendant failed to raise this argument before the court, affording plaintiff an opportunity to respond and the court to hold a N.J.R.E. 104 hearing on the opined safety principles and data cited, we have fully considered the expert's report. It is well-established that "appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." Selective Ins. Co. of Am.

---

[2] The net opinion rule directs "that experts 'be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable.'" Townsend v. Pierre, 221 N.J. 36, 55 (2015) (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)).

v. Rothman, 208 N.J. 580, 586 (2012) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)).

Accepting the unrefuted safety principles stated in the expert's report, we conclude plaintiff's contention that defendant breached an accepted safety standard of care for the Broad Street platform location is unsupported. We reject his argument that Dr. Gotham "provided ample evidence of the condition of the station itself along with the area surrounding the station, and how that contribute[d] to the unsafe conditions for [defendant's] employees." Dr. Gotham specifically opined defendant deviated from the standard of care by failing to: keep other areas clean; prevent graffiti on parts of the property; provide lighting in other hallways; have convex mirrors elsewhere; and improve the lighting in the "portal beneath the rail lines." These alleged breaches of safety guidelines in other locations of the station lack a sufficient nexus to defendant's duty to plaintiff in the track platform area where the assault occurred.

Dr. Gotham also asserts the attack against plaintiff "resulted from the absence of capable guardianship and [the] failure by . . . defendant to enact security measures to effectively deter reasonably foreseeable criminal activity." We observe it is undisputed the Broad Street station had a police presence and "ample amounts of surveillance for patrons" with security cameras. Further,

16

Transit police responded within two minutes to the incident. Notably, Dr. Gotham failed to identify what specific safety guidelines or security measures defendant should have followed or failed to follow to prevent Bailey's assault. While Dr. Gotham referenced "the physical features of a site influence the choices of potential offenders" and the importance of "[c]apable guardianship . . . [such as] supervision of people and places," his opinion is void of support to establish defendants committed a safety deviation. Further, Dr. Gotham's causation conclusion is unsupported. Simply asserting defendant should have prevented the assault is insufficient to sustain a FELA claim.

The court soundly determined no evidence demonstrated defendant failed to address a safety issue "at the scene of the incident where th[e] accident occurred" and "it [wa]s not enough . . . to find an alleged flaw in the building or the neighborhood." No prima facie facts support that defendant "using reasonable care should have . . . taken other steps to inform [and/or] protect its employees." See Gallose, 878 F.2d at 85. A defendant is only liable under FELA for its "failure to provide a safe workplace 'when it knows or should know of a potential hazard in the workplace, yet fails to exercise reasonable care to inform and protect its employees.'" Syverson v. Consol. Rail Corp., 19 F.3d 824, 826 (2d Cir. 1994) (emphasis added) (quoting Gallose, 878 F.2d at 84-85).

A-0142-23

Because the expert provided no foundation to support a finding that defendant breached a safety standard by failing to exercise reasonable care to protect plaintiff at the platform track, we discern no bases to disturb the court's order granting summary judgment and dismissing plaintiff's complaint with prejudice. See State v. Cotto, 471 N.J. Super. 489, 529 (App. Div. 2022) (explaining the trial court must "act as a gatekeeper" to determine whether expert testimony is needed, such as for an "area where the average person could not be expected to have sufficient knowledge" (first quoting State v. Covil, 240 N.J. 448, 465 (2020); and then quoting State v. Doriguzzi, 334 N.J. Super. 530, 538 (App. Div. 2000))).

In summary, the record is devoid of "enough [evidence] to justify a jury's determination that [defendant's] negligence had played any role in producing the harm." Syverson, 19 F.3d at 827 (first alteration in original) (emphasis omitted) (quoting Gallick, 372 U.S. at 116). Thus, construing plaintiff's FELA claim liberally and drawing all reasonable inferences in his favor, plaintiff failed to provide sufficient competent proof of defendant's breach of a safety standard in providing a reasonably safe workplace and causation.

To the extent not addressed, plaintiff's remaining contentions lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

A-0142-23

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

19